IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WALTER E. CLARK, III, )<br>)<br>*Plaintiff,* )<br>)<br>vs. )<br>)<br>ELECTRIC POWER BOARD OF )<br>METROPOLITAN NASHVILLE AND )<br>DAVIDSON COUNTY d/b/a NASHVILLE )<br>ELECTRIC SERVICE, )<br>)<br>*Defendant.* )<br>) | CIVIL ACTION NO.<br><br>JURY DEMAND |

# COMPLAINT

Plaintiff, WALTER E. CLARK, III (hereinafter referred to as "Plaintiff" or "Clark"), files his Complaint against Defendant, ELECTRIC POWER BOARD OF METROPOLITAN NASHVILLE AND DAVIDSON COUNTY d/b/a NASHVILLE ELECTRIC SERVICE (hereinafter referred to as "Defendant" or "NES"), and alleges as follows:

## NATURE OF COMPLAINT

1. This action is brought by Plaintiff against Defendant for discrimination against him because of his race, color, and origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 et seq. ("Title VII"), The Civil Rights Act of 1991, 42 U.S.C. §§ 1981, and 1983 and The Tennessee Human Rights Act ("THRA") Tenn. Code Ann. § 4-21-101, *et seq.*

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. §1331, §1343(4), and §1367 as the Plaintiff brings this action for damages under Title VII, 42 U.S.C. §2000 et. seq., as amended, 42 U.S.C. §1981, §1983 and THRA Tenn. Code Ann. § 4-21-101, *et seq*.

3. The venue is proper in the Middle District of Tennessee, Nashville, Division pursuant to under 28 U.S.C. 1391 as the alleged violations occurred in this judicial district.

## PARTIES

4. Plaintiff is an African American male born in 1977.

5. Plaintiff is a member of a protected class based on race and color within the meaning of Title VII and 42 U.S.C. §§ 1981 and 1983.

6. Plaintiff is a resident of Tennessee. At all times material to this action, Plaintiff was and is an employee of Defendant NES as defined in 42 U.S.C. § 2000 et seq and 42 U.S.C. §§ 1981 and 1983.

7. Defendant NES is a quasi-governmental entity doing business in the state of Tennessee.

8. NES is an employer as defined by 42 U.S.C. §§ 1981, §1983, and 2000e(b), employing more than 15 individuals and under THRA § 4-21-102(5) and (14).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Plaintiff has fulfilled all conditions necessary to the institution of this action under Title VII of the Civil Rights act of 1964, as amended and THRA.

10. Plaintiff filed a discrimination Complaint against Defendant NES with the Tennessee Human Rights Commission ("THRC") and got it closed due to receiving a Right to Sue from the United States Equal Employment Opportunity Commission ("EEOC").

11. On November 23, 2021, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendant for discrimination based on Race, Color, Origin, and Retaliation (Charge No.: 25A-2022-00143).

12. On November 2, 2022, a Notice of Right to Sue was issued from the EEOC to the Plaintiff. A true and correct copy of the Notice of Right to Sue is attached hereto as **Exhibit "A"** and fully incorporated herein by reference.

13. Accordingly, this lawsuit is properly and timely filed within ninety (90) days of issuance of Plaintiff's Notice of Right to Sue Letter by EEOC.

## FACTS RELEVANT TO ALL CAUSES OF ACTION

14. In or about September 2001, Plaintiff was hired and has been working with NES since then.

15. Plaintiff worked as Storekeeper for over four years.

16. For the last 16 years, Plaintiff has been working as an Electrician in NES Construction and Maintenance (C&M) department.

17. Plaintiff, over these years, has worked in three different sections of the C&M department, i.e., he worked over ten years in the Maintenance section, three years in the Switchboard section, and in the last months of 2020, he moved to the Transformer section, where he is still working.

18. Plaintiff performed his duties and fulfilled his responsibilities in a satisfactory manner. Despite Plaintiff's long tenure and satisfactory service, he was passed over for promotions on numerous occasions like other qualified African American NES employees.

19. Since the day of his employment, Plaintiff has been subject to ongoing harassment, retaliation, racial discrimination, and a hostile work environment by his Supervisors and other

Caucasian employees of NES. At all times relevant to this lawsuit, Plaintiff was subjected to racist comments, racist displays, and an overall pervasive environment.

20. Plaintiff directly heard and/or is aware of NES Caucasian coworkers and supervisors saying racially inflammatory words such as "NIGGER," "BOY," "MOON," a short term for "crickets, also known as a slave that is escaped in the moonlight," and "Need to have slaves again to Make America Great Again." The use of racist comments, epithets, and slurs is a common practice in the NES environment.

21. In the Maintenance section, Plaintiff's Supervisor, Ernest Brown ("Brown"), harassed Plaintiff because he was black. Plaintiff felt unsafe working with Brown.

22. In front of coworkers, Brown used to call Plaintiff a "Boy." Plaintiff never liked this and made it known to Brown, but he never stopped.

23. Plaintiff has also been the victim of constant bullying, being called "Nigger" and "lazy Nigger" by Bobby Martin Jr, aka Junior, a Caucasian NES employee.

24. On April 11, 2019, at 11:34 a.m. Brown pulled into the station and parked his truck across from the Plaintiff, in an unusual location, to further harass and intimidate Plaintiff even though Brown was no longer Plaintiff's Supervisor. Plaintiff took his picture and sent it to Jeff Locke, Superintendent in the Switchboard section. Thereafter, Brown left the station. Brown came into the building several times and just stared at Plaintiff and saw his every move for absolutely no reason.

25. On April 25, 2019, when Plaintiff and his Working Foreman, Jeff Hardcastle, were in the Switchboard section and were leaving Metro Centre Station, Brown drove down the street with no business whatsoever over there, circled, came back, and slowed down near them. Brown made eye contact and smirked at Plaintiff, and then sped off.

26. On April 26, 2019, Plaintiff walked into the office to confront Brown about his continued harassment toward him. Brown and Jeff Locke were there in the office. Plaintiff asked Jeff if there was a reason Brown drove by Metro Center sub at 1:32 p.m. on 25th April, very slow with no business whatsoever, and smiled at him in a sinister way. Brown then said, why does it matter? Plaintiff answered, "It matters because you keep harassing me and showing up where I am. It's been ongoing for years because, for some reason, you have always had it in for me (I'm black)." Willie Mills and Chris Wheeler also witnessed everything going on in the office.

27. On June 18, 2020, Plaintiff's coworker Ray Adcock Working Foreman in the Switchboard section, said to him, "I'll tell you how to train that son of a bitch…put a white sheet over your head and go out there beat the shit out of him until he hates all white people."

28. On August 18, 2020, Plaintiff emailed his Manager, Eric Lewis, a complaint about Ray Adcock's June 18th racist comment, but no action, as promised, was taken by Defendant or its Manager. The Plaintiff also reported the same to the Human Resources Department and Camille Stewart, but no action was taken, as promised.

29. Plaintiff further alleges that on several occasions, he applied for promotion but faced racial discrimination in the hiring and promotion by denying jobs and giving the jobs to other Caucasian employees.

30. Plaintiff has been at NES for the last 20 years, and he was hired with William Friedburg, aka Butch. In 2016, Butch was put up for promotion to Supervisor. He got the Working Foreman position over Plaintiff. Plaintiff and Butch started working on the same day at the NES and had the same amount of time and qualifications. Notwithstanding, Plaintiff was graded low and never promoted, even as a Foreman, for the last 16 years. Plaintiff believes that he was not promoted because of his race and color.

31. Plaintiff applied for promotion in April 2021 as a Working Foreman, whereby, Plaintiff was again rejected, and two Caucasian employees were selected for the position.

32. In October 2021, Plaintiff was moved to the Transformer shop, and a few weeks later, David Andrews (Corky) was brought to the transformer shop. On day one, Corky said that "he was going to get the next Working Foreman job." It turned out that Corky was correct. He even knew things that were going to be on the test before the job. Black people who applied for the job were at the back of the list and did not even qualify for an interview because of unfair grading. Plaintiff is even more qualified but yet consistently overlooked.

33. When Plaintiff was at the Transformer shop, he was again subjected to harassment and discrimination when he was singled out and accused of violating the beard policy. Plaintiff was told "to go home or buy a razor and shave the beard" when Plaintiff did not have a beard in violation of the so-called policy. However, the other Caucasian Supervisor, Jim Cadin, with a beard, was just told, "you know you can't have a beard" and no action was taken against him.

34. On November 29, 2021, when Bridgette Roberts, Supervisor, handed out daily planners for 2022 to the Working Formen Corky and Misty Reed. Corky asked Misty Reed, "When is the next time that we're off next year so that I can start planning to be off." Misty replied, "We have that Martin Luther King Day," Corky continued to flip through the pages of his January calendar and said, "When is it?" Misty replied, "I don't know, ask Walter; he will know when it is" indicating that Plaintiff would know because he is African American. These comments devastated Plaintiff because they were insensitive, singled him out as a Black employee and happened to his face. Plaintiff immediately got up and walked out of the break room, and Corky walked up to him and said, "I understand why you left; I can't believe she said that."

35. On December 21, 2021, Plaintiff sent a formal complaint email to Bridgette Roberts, Supervisor in the Transformer section, about the racist comment made by Misty Reed to Plaintiff.

36. On December 28, 2021, Bridgette Roberts further sent this complaint to Steve Clark, Manager of C&M, but Plaintiff did not hear anything from him.

37. On February 3, 2022, Plaintiff sent a follow-up email to Steve Clark about the Complaint, but he did not receive any response.

38. Much later, Steve Clark alleged that he referred the matter to Charles Drewery. No correction action has been taken to resolve Plaintiff's grievance.

39. Misty Reed also makes racist comments to other employees which impacts the Plaintiff. Misty Reed regularly refers to African American employee Michael Carter as her "moon cricket." There are numerous witnesses to her racist comments.

40. The hostile environment at NES is continuous and ongoing. Every time Plaintiff suffered racial comments and discrimination during his employment, he filed his grievances or reported to his Supervisors and/or Managers, but everything was in vain; no corrective action has ever been taken to resolve such grievances.

41. On several occasions, Plaintiff faced NES's racial discrimination, which includes but not limited to racial gestures, e.g., a noose hanging at work (multiple times), constantly being overlooked for jobs due to his race even though he worked harder than his fellow white coworkers, unfair treatment by supervisors as well as manipulation of the performance appraisal system and grades, being graded differently because of his race, coworkers that are favorites of the supervisors receive better grades and gain more points towards promotion (they all happen to be white).

42. Throughout his employment at the NES, Plaintiff has experienced and witnessed African American employees not being given opportunities for promotion and advancement equal to white employees.

43. There is no dearth of examples of NES's discrimination based on race, color, and national origin. Most recently, on January 9, 2023, NES Operations Manager Ty Jones changed his email profile to a "Not Equal" '≠' symbol. The use of this symbol is an attempt to claim that different races are not equal to each other and to imply that whites are superior to blacks. A true and correct copy of Ty Jones' email profile and this hate symbol's description is attached hereto as **Exhibit "B"** and fully incorporated herein by reference. Despite reports of Jones' use of this symbol to NES, no corrective action has been taken.

44. Plaintiff has been adversely affected by the challenged practice and pattern of racial discrimination detailed in this Complaint, including Defendant NES's subjective selection and discipline policies, practices and procedures, and unequal terms and conditions of employment, which have prevented Plaintiff from advancing into higher and better paying positions for which he was qualified, and have deprived him of the opportunity to work in an integrated environment in which African-American employees hold higher-level positions. Plaintiff has been subjected to a racially hostile working environment.

45. As a result of Defendant's acts or conduct, Plaintiff has experienced pain and suffering, racism, stress, depression, and anxiety (having to be on medication for stress and anxiety), being diagnosed because of stress, his family being ripped apart and ultimately ending in a divorce, unfair treatment and stalking, and receiving low grades.

46. Plaintiff has been deprived of employment opportunities and has otherwise been subjected to Defendant's intentional discrimination regarding his rights under Title VII and 42

U.S.C. §§ 1981 and 1983, which has caused Plaintiff to suffer economic losses, including lost wages and benefits, interest, attorney fees and costs, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses and damages in violation of Title VII and 42 U.S.C. §§ 1981 and 1983 prohibiting discriminatory and retaliatory treatment.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Intentional Race Discrimination
### (§1983 for violations of §1981 and Title VII)

47. Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1–46 with the same force and effect as though fully set forth herein.

48. Plaintiff has been subjected to racial discrimination in violation of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981 and 1983, including, but not limited to, a pattern and practice of intentional discrimination and a battery of policies, practices, and procedures having unlawful, disparate impact on his employment opportunities. Defendant NES follows a policy and practice of restricting the employment opportunities of African American employees such as Plaintiff to lower job classifications and compensation levels. The means of accomplishing such racial discrimination include, but are not limited to, the NES's selection and promotional procedures, unequal terms and conditions of employment, and a history of tolerating and encouraging a racially hostile working environment.

49. As a protected class member, Plaintiff was discriminated against when he applied for the Working Forman position and was graded lower by NES Supervisors than other similarly situated NES's Caucasian employees.

50. Plaintiff was subjected to intentional discrimination by NES when he was denied a promotion even though he was qualified for the job; in contrast, Butch, a former Caucasian coworker, was promoted to Working Foreman.

51. Race is a motivating factor in NES's rejection of Plaintiff for the position.

52. NES intentionally discriminated against Plaintiff in the terms and conditions of Plaintiff's employment on the basis of race in violation of Title VII and §1981

53. NES treated Plaintiff differently than similarly situated Caucasian employees.

54. Due to Defendant's disparate treatment, Plaintiff has suffered both irreparable injury and compensable damage. Plaintiff has suffered, is now suffering, and will continue to suffer emotional pain, mental anguish, humiliation, embarrassment, and other damages.

55. As a direct and proximate result of Defendant's discriminatory employment practices, Plaintiff has experienced extreme harm and is entitled to recover monetary and nonmonetary relief and other relief.

## SECOND CAUSE OF ACTION
### Racial Harassment – Hostile Work Environment
### (§1983 for violations of §1981 and Title VII)

56. Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1–46 with the same force and effect as though fully set forth herein.

57. Plaintiff deserves a fair work environment free of racial animus.

58. Plaintiff was subjected to a hostile work environment within the meaning of the Title VII of the Civil Rights Act of 1964, Section 1981 and 1983 due to harassment by NES employees in administration, managerial positions, and coworkers.

59. Plaintiff was subjected to racially offensive, severe, or pervasive jokes, insults, and slurs on various occasions by NES Supervisors, Working Foremen, and other Caucasian employees.

60. Plaintiff was the victim of constant bullying and racial slur for being called "Nigger" and "Lazy Nigger" by NES Caucasian employee(s).

61. Plaintiff was subjected to and forced to endure harassment at NES, resulting in a hostile work environment.

62. Plaintiff did not welcome the harassment he endured.

63. Plaintiff found the harassment to be humiliating and intimidating, and the harassment unreasonably interfered with Plaintiff's work performance by creating an intimidating, hostile, or offensive environment.

64. The NES failed to take prompt remedial action to stop the harassment Plaintiff endured.

65. NES is liable for a racially hostile work environment under Title VII, Section 1981, which results from discriminatory practices, comments, and harassment of Plaintiff.

66. Due to such discriminatory acts, Plaintiff has suffered both irreparable injury and compensable damage. Plaintiff has suffered, is now suffering, and will continue to suffer emotional pain, mental anguish, humiliation, embarrassment, and other damages.

67. As a direct and proximate result of Defendant's discriminatory employment practices, Plaintiff has experienced extreme harm and is entitled to recover monetary and nonmonetary relief and other relief.

### THIRD CAUSE OF ACTION
### Racial Discrimination
### (Tennessee Human Rights Act § 4-21-101, Et Seq.)

68. Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1–46 with the same force and effect as though fully set forth herein.

69. Tennessee Human Rights Act § 4-21-101 (a)(1) "[p]rovide for execution within Tennessee of the policies embodied in the federal Civil Rights Acts of 1964, 1968 and 1972……"

70. NES is an employer under THRA § 4-21-102(5) in that it is a business with eight or more employees doing business in the State of Tennessee.

71. Plaintiff has been subjected to racial discrimination in violation of the Tennessee Human Rights Act. "Discriminatory practices" means any direct or indirect act or practice of exclusion, distinction, restriction, segregation, limitation, refusal, denial, or any other act or practice of differentiation or preference in the treatment of a person or persons because of race, creed, color, religion, sex, age or national origin. THRA § 4-21-102(4).

72. Plaintiff was subjected to racial discrimination by NES's Caucasian Supervisors.

73. NES is liable under Tennessee Human Rights Act for racial discrimination resulting from the discriminatory practices of its employees.

74. Due to such discriminatory acts, Plaintiff has suffered both irreparable injury and compensable damage. Plaintiff has suffered, is now suffering, and will continue to suffer emotional pain, mental anguish, humiliation, embarrassment, and other damages.

75. As a direct and proximate result of Defendant's discriminatory employment practices, Plaintiff has experienced extreme harm and is entitled to recover monetary and nonmonetary relief and other relief.

## FOURTH CAUSE OF ACTION
### Negligence

76. Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1–46 with the same force and effect as though fully set forth herein.

77. NES owed a duty to Plaintiff to protect him from employment discrimination and harm while at the workplace, a duty to properly supervise its employees, and correct ongoing harassment at the workplace.

78. NES had actual and constructive knowledge of the multiple incidents of racism, harassment, and racist displays and language being used by NES employees at work, as Plaintiff time to time, reported his grievance to his Supervisors and Managers. However, NES failed to take any corrective action to protect Plaintiff and other similarly situated employees from such racial discrimination and harassment.

79. NES engaged in, condoned, and ratified harassing and discriminatory conduct of its employees.

80. NES was negligent in failing to properly supervise its employees, in failing to protect Plaintiff from harm and employment discrimination at the workplace, and in failing to prevent ongoing harassment in violation of Title VII, Section 1981, and THRA.

81. NES's actions and/or inactions injured Plaintiff.

82. Due to NES's failure to prevent racial discrimination and harassment at work, Plaintiff has suffered both irreparable injury and compensable damage. Plaintiff has suffered, is now suffering, and will continue to suffer emotional pain, mental anguish, humiliation, embarrassment, and other damages.

83. As a direct and proximate result of Defendant's discriminatory employment practices, Plaintiff has experienced extreme harm and is entitled to recover monetary and nonmonetary relief and other relief.

**PRAYER FOR RELIEF**

WHEREFORE PREMISES CONSIDERED, Plaintiff, WALTER CLARK, prays:

(i) That the Defendant be served and required to answer within the time allowed by law;

(ii) That a jury trial be held and a judgment entered in his favor;

(iii) That Plaintiff be granted a judgment against NES for the sum of money determined by the jury to be sufficient to compensate him for the damages complained of herein, including but not limited to embarrassment and humiliation, emotional pain suffering and mental anguish, stress, depression, and anxiety loss of enjoyment of life under THRA;

(iv) That Plaintiff be granted a judgment against NES for punitive damages and compensatory damages under Title VII and 42 U.S.C. §§ 1981 and 1983;

(v) The Plaintiff be awarded "back pay" damages to be determined by the jury under Section 1981 and 1983;

(vi) That Plaintiff be granted a judgment against NES for reasonable attorney fees and costs incurred in bringing this action;

(vii) Prejudgment interest and, if applicable, post-judgment interest; and;

(viii) Such other and further legal or equitable relief to which Plaintiff may justly be entitled.

Respectfully submitted,

/s/Ashley L. Upkins
ASHLEY L. UPKINS, ESQ.
TN BPR No. 033598
The Cochran Firm - Nashville, LLC
1720 West End Avenue, Suite 320
Nashville, TN 37203
Office: (615) 678-6278
Email: aupkins@cochranfirmnashville.com
*Attorney for Plaintiff*
WALTER E. CLARK, III